IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SCOTT ALAN MIELKE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-00567-O-BP |
| | § | |
| ANDREW M. SAUL, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Scott Alan Mielke ("Mielke") filed this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments under Title XVI of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

**I.    STATEMENT OF THE CASE**

Mielke was born on February 2, 1976 and has at least a high school education. Soc. Sec. Admin. R. (hereinafter "Tr.", ECF Nos. 12-1 and 12-2), ECF No. 12-1 at 23–24. He filed for DIB and SSI on May 16, 2016, alleging that his disability began on August 25, 2009. Tr. 10. On the alleged disability date, he was 33 years old, which is defined as a younger individual. Tr. 23. The Commissioner initially denied his claims on August 23, 2016 and denied them again upon reconsideration on February 23, 2017. Tr. 10. Mielke requested a hearing, which was held before

Administrative Law Judge ("ALJ") Jack Raines on May 10, 2018 in Fort Worth, Texas. Tr. 10, 36. The ALJ issued an unfavorable decision on September 21, 2018, finding that based on the applications for SSI and DIB, Mielke was not disabled. Tr. 25.

In his decision, the ALJ employed the statutory five-step analysis and established during step one that Mielke had not engaged in substantial gainful activity since August 25, 2009, the alleged onset date. Tr. 13. At step two, the ALJ determined that Mielke had the severe impairments of degenerative disc disease of the lumbar spine, Wilson's disease, liver cirrhosis, depression, neurocognitive disorder, bipolar disorder, reactive airway disease, and obesity. *Id.* He found that Mielke had mild limitations in interacting with others and in adapting or managing himself. Tr. 14. He also found that Mielke had moderate limitations in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace. *Id.* At step three, the ALJ found that Mielke's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 13. He found that Mielke had

> the residual functional capacity to perform the following: The individual is able to lift and carry occasionally up to 20 pounds; lift and carry frequently 10 pounds or less; stand and walk about 6 hours in an 8-hour day; and sit 6 hours in an 8-hour day. The individual can do no climbing of scaffolds, ropes, and ladders, and only occasionally climb ramps and stairs. The individual can occasionally balance, kneel, crouch, crawl, and stoop. The individual can frequently reach bilaterally and occasionally handle, finger, and feel bilaterally. The individual has no visual or communication limitations; and can do no work around hazardous moving machinery, excessive vibration, or work at unprotected heights. The individual is able to understand[,] remember and apply short and simple instructions in a simple and routine work environment, can make judgments on simple work[-]related decisions. He can interact appropriately with the public, co-workers, and supervisors. In this work environment, the individual can respond to usual work pressures appropriately and respond appropriately to changes in the work setting.

Tr. 16. At step four, the ALJ found that Mielke was unable to perform any past relevant work. Tr. 23. At step five, the ALJ found that Mielke could perform jobs that existed in significant numbers in the national economy, so a finding of "not disabled" was appropriate. Tr. 24.

The Appeals Council denied review on May 25, 2019. Tr. 1. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.  STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404 (2020). The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)–(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 404.1520(a)(4)(iv). Before this step, the ALJ assesses

the claimant's residual functional capacity ("RFC"), which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). Fifth, impairments must prevent the claimant from doing any work after considering the claimant's RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197–98; 20 C.F.R. § 404.1520(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and

not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III.   ANALYSIS

Mielke raises three issues on appeal. He claims that the ALJ (1) did not properly consider all the functional limitations in the record when determining the RFC, (2) improperly evaluated the medical evidence, and (3) did not properly establish that Mielke could perform jobs that existed in significant numbers in the national economy. ECF No. 14 at 2–3.

#### A. The ALJ properly considered all of Mielke's functional limitations.

Mielke argues that although the ALJ found that his reactive airway disease was a severe impairment, he did not include limitations from the disease in the RFC finding. ECF No. 14 at 8–9. He also argues that while the ALJ recognized his neurocognitive disorder as severe, he erred by failing to incorporate functional limitations that stemmed from his impaired memory. *Id.* at 9. He contends that the ALJ erred by failing to evaluate whether the neurocognitive disorder satisfied the Listing requirements for presumptive disability. *Id.* He further argues that when an ALJ identifies an impairment as severe at step two but does not include relevant limitations in the RFC, the RFC contradicts the step two finding and remand is required. ECF No. 17 at 3–4.

The Commissioner argues that the ALJ determined Mielke's reactive airway disease only caused "more than minimal limitation" on his ability to perform basic work activities. ECF No. 15-2 at 3 (citing Tr. 13). He further argues that Mielke does not cite to medical evidence to support his assertion that he needs time off tasks to address symptoms of his reactive airway disease. *Id.* Additionally, the Commissioner argues that because the state agency physicians determined that Mielke's neurocognitive disorder did not meet the Listings, and Mielke does not cite to evidence that suggests the ALJ would have reached a different conclusion, any error resulting from the

ALJ's failure to address the Listing was harmless. *Id.* at 3–4. Finally, the Commissioner asserts that the ALJ included in the RFC the functional limitations caused by Mielke's impaired memory. *Id.* at 4.

By definition, a claimant's RFC is the most the claimant can still do despite the claimant's impairments and any related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2020). The ALJ is not required to expressly state in the RFC the limitations on which it is based. *Cornejo v. Colvin*, No. EP-11-cv-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013) (citing *Bordelon v. Astrue*, 281 F. App'x 418, 422–23 (5th Cir. 2008) (per curiam)). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). The functions in paragraphs (b), (c), and (d) relate to physical, mental, and other abilities. The ALJ considers the nature and extent of the claimant's physical, mental, and other relevant limitations. 20 C.F.R. § 404.1545.

In determining a claimant's physical limitations, the ALJ considers evidence of the claimant's abilities to sit, stand, walk, lift, carry, push, pull, and perform other physical functions. *Id.* § 404.1545(b). In determining the claimant's mental limitations, the ALJ considers evidence of the claimant's abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and work pressures in a work setting. *Id.* § 404.1545(c). The ALJ uses what is known as the "paragraph B criteria" to rate the degree of the claimant's mental limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a; *see id.* Part 404, Subpart P, Appendix 1. Finally, the ALJ considers limitations and

restrictions that affect other work-related abilities. 20 C.F.R. § 404.1545(d). As will be shown below, the ALJ properly considered all of Mielke's functional limitations.

### 1. Reactive airway disease limitations

When an ALJ finds that an impairment is severe but does not include any limitations for that impairment in the RFC, "the RFC in effect contradicts the step two finding," which generally warrants remand. *Winston v. Berryhill*, No. 3:16-CV-419-BH, 2017 WL 1196861, at *13 (N.D. Tex. Mar. 31, 2017). "In cases where reviewing courts have found that an ALJ did not err in finding severe impairments at step two and not attributing any limitation to those impairments in the RFC assessment, the ALJs considered the limitations that were encompassed by the severe impairments or accounted for the limitations in some respect before making a disability finding." *Id.*

Here, the record reflects that the ALJ considered the limitations encompassed by Mielke's reactive airway disease before making a disability finding. In his discussion supporting the RFC finding, he noted the results of Mielke's pulmonary function test on September 26, 2013 as well as Mielke's self-reported observations about his breathing abilities and difficulties. Tr. 19, 21. The ALJ does not have a general duty to provide rational and logical reasons for a decision. *Winston*, 2017 WL 1196861, at *10 (citations omitted). "The regulations require only that an ALJ consider and evaluate medical opinions. They do not require an ALJ to state the weight given to each symptom and diagnosis in the administrative record." *Id.* Although Mielke disagrees with the ALJ's decision, he fails to point to any evidence showing that the ALJ did not consider the medical opinions regarding Mielke's reactive airway disease. *See* ECF Nos. 14, 17. The record shows that the ALJ considered that evidence. Accordingly, the undersigned finds that the ALJ did not err in failing to incorporate limitations from Mielke's reactive airway disease into the RFC.

*2. Neurocognitive disorder limitations*

The same rationale applies to the limitations caused by Mielke's neurocognitive disorder. The ALJ accounted for Mielke's memory impairments caused by his neurocognitive disorder, finding in the RFC that Mielke could perform work that involved understanding, remembering, and applying only "short and simple instructions in a simple and routine work environment," and making judgments on simple, work-related decisions. Tr. 16. The ALJ also accounted for the memory impairments in his discussion supporting the RFC. He discussed five years' worth of Mielke's self-reported symptoms, from September 2012 through October 2017. Tr. 19–20. Accordingly, the undersigned finds that the ALJ considered evidence regarding Mielke's neurocognitive disorder in arriving at Mielke's RFC. Even if he had not incorporated Mielke's memory limitations into the RFC, this would not be error because he accounted for the limitations in his decision.

*3. Evaluation of neurocognitive disorder*

"An ALJ does not err by failing to specifically consider a listing if the record evidence shows that the claimant did not meet the criteria." *Bordelon v. Astrue*, 281 F. App'x 418, 422 (5th Cir. 2008) (citation omitted). Here, the ALJ did not specifically state whether Mielke's neurocognitive disorder meets the Listing criteria for presumptive disability. This is not error because the state agency physicians determined that Mielke's neurocognitive disorder did not meet the Listings. ECF No. 15-2 at 3–4 (citing Tr. 108–10). This evidence, showing that Mielke did not meet the criteria, is in the record and satisfies the legal requirement. Therefore, the undersigned finds that the ALJ did not err in not specifically mentioning whether Mielke's neurocognitive disorder met the Listing.

8

### B. The ALJ properly considered the medical evidence.

Mielke argues that the ALJ rejected all the medical evidence and substituted his own medical judgment about Mielke's functional limitations. ECF No. 14 at 11. Mielke contends that the ALJ failed to give evidentiary reasons for his disagreement with Dr. Bellah, the state medical consultant, who found that Mielke had moderate limitations in all four of the paragraph B categories while the ALJ found that he had mild limitations in two of the categories and moderate limitations in the other two. Tr. 14; ECF No. 14 at 10. Further, Mielke asserts that the ALJ's finding that Mielke could stand and walk for six hours in an eight-hour workday was inconsistent with the finding of Dr. Battles, the consultative examiner. Tr. 16; ECF No. 14 at 11–12. He argues that the ALJ failed to consider Dr. Battles's opinion or explain with particularity the weight he gave to it. ECF No. 14 at 11–12. Mielke also argues that the ALJ rejected the opinion of treating psychiatrist Garrick Prejean, M.D., which supported Dr. Bellah's opinion, and failed to analyze the opinion under 20 C.F.R. §§ 404.1527 and 416.927. *Id.* at 11–13.

In response, the Commissioner argues that the ALJ is not bound by Dr. Bellah's findings regarding Mielke's mental and social abilities. ECF No. 15-2 at 4–5. He asserts that the ALJ did not include social limitations in the RFC because Mielke testified about participating in activities that required social skills comparable to the skills necessary to obtain and maintain employment, so these activities were inconsistent with Mielke's allegations of disability. *Id.* at 5. The Commissioner further argues that Dr. Battles's statement about Mielke's abilities to sit and stand was qualified by the word "probably." *Id.* Dr. Battles said that "[b]ack pain *probably* limits uninterrupted sitting and standing to short-to-intermediate periods of time and along with his dyspnea limits walking to short-to-intermediate periods of time." *Id.* (emphasis added) (citing Tr. 1039). Further, Mielke's testimony about sitting with his dogs all day, flying from Dallas to

9

Michigan, walking around at Six Flags, and walking for two miles contradicts Dr. Battles's finding. *Id.* at 5–6. The Commissioner asserts that the ALJ's decision to give little weight to Dr. Prejean's opinion was proper because the opinion was in checklist form, and Dr. Prejean did not provide specific references or narrative citations to medical records that supported his opinion. *Id.* at 6–7. Also, the ALJ considered other medical records relevant to Mielke's mental state. *Id.* at 7. The Commissioner contends that the ALJ was not required to apply the factors listed in 20 C.F.R. §§ 404.1527 and 416.927 because Dr. Prejean did not offer a medical opinion under 20 C.F.R. § 416.927(a)(1). *Id.* at 7–8.

Mielke further argues that the ALJ failed to explain why he accepted part but not all of Dr. Bellah's findings. ECF No. 17 at 5. He also asserts that because Dr. Prejean is a treating doctor, he is presumed to have access to all of Mielke's medical records, and he did not check the same box for each category. *Id.* at 5–7. Additionally, Mielke contends that Dr. Prejean listed clinical findings supporting his opinion, and the Commissioner does not offer case law for his argument that the ALJ was not required to conduct an analysis under 20 C.F.R. §§ 404.1527 and 416.927. *Id.*

   *1. Dr. Bellah's opinion*

An ALJ "cannot reject a medical opinion without an explanation." *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000). The ALJ is not bound by state medical consultants' findings, however. *See* 20 C.F.R. § 404.1546(c); *Woodruff v. Astrue*, No. 1:09-CV-237-C ECF, 2011 WL 1135081, at *4 (N.D. Tex. Mar. 29, 2011) ("[T]he ALJ has the sole responsibility for determining a claimant's disability status and is free to reject the opinion of any physician when the evidence supports a contrary conclusion."). Mielke contends that the ALJ erred by failing to make clear the evidentiary reasons for his disagreement with Dr. Bellah, who found that Mielke had moderate

limitations in all four paragraph B categories, while the ALJ found that Mielke had moderate limitations in two categories and mild limitations in the other two. Tr. 14, 109; ECF No. 14 at 10.

Here, the ALJ did not reject Dr. Bellah's opinion without an explanation. The ALJ noted that he "found a more restrictive [RFC] regarding physical limitations because additional evidence was received in the course of developing the claimant's case for review at the administrative hearing level." Tr. 22. Further, he referenced the opinion to support his conclusion that while Mielke had a limited social support system and mostly avoided social interaction, the clinical evidence only supported a conclusion of mild limitations in interacting with others. Tr. 14.

The ALJ also referenced Dr. Bellah's opinion to support his conclusion that Mielke only had mild limitations in adapting and managing himself. *Id.* The ALJ further discussed Mielke's January 2017 statements that his basic and instrumental living skills, including bathing, money management, and medication compliance, were intact; he was capable of being self-reliant in managing his personal affairs, including shopping and finances; and he was capable of referencing navigation tools while traveling. Tr. at 14–15. The ALJ provided adequate reasons for rejecting Dr. Bellah's non-binding conclusions and finding that Mielke had only mild limitations in interacting with others and adapting and managing himself. Substantial evidence supports the ALJ's paragraph B findings.

*2. Dr. Battles's opinion*

Mielke argues that the ALJ's conclusion that he could stand or walk for six hours per day was inconsistent with consultative examiner Dr. Battles's findings, and the ALJ failed to consider these findings. ECF No. 14 at 11–12. Dr. Battles concluded that Mielke would aggravate his back pain if he stood for more than 10 minutes at a time, and "[b]ack pain probably limits uninterrupted

11

sitting and standing to short-to-intermediate periods of time and along with his dyspnea limits walking to short-to-intermediate periods of time." Tr. 1036, 1039.

That the ALJ considered Dr. Battles's findings is shown by his discussion summarizing the findings. Tr. 17–18. Further, Mielke has failed to demonstrate that no credible evidentiary choices or medical findings support the ALJ's RFC finding. Although Mielke argues that other evidence in the record supports his assertion that he is not capable of standing or walking for six hours per day, his "burden is not to highlight evidence contrary to the ALJ's ruling, but to show that there is no substantial evidence supporting the ALJ's decision." *Caldwell v. Colvin*, No. 4:15-cv-00576-O-BL, 2016 WL 3621097, at *3 (N.D. Tex. June 10, 2016), *rec. adopted,* No. 4:15-cv-00576-O, 2016 WL 3523780 (N.D. Tex. June 28, 2016). Further, Dr. Battles's opinion is qualified by the word "probably." Tr. 1039. Mielke's disagreement with the ALJ's RFC finding does not carry his burden of establishing that no substantial evidence supports the ALJ's determination. As a result, reversal of the ALJ's opinion is not required on this point.

*3. Dr. Prejean's opinion*

Mielke argues that the ALJ improperly rejected the opinion of Dr. Prejean, his treating psychiatrist, which supported Dr. Bellah's opinion, and failed to analyze it under 20 C.F.R. §§ 404.1527 and 416.927. *Id.* at 11–13. The Commissioner asserts that the ALJ's decision to give little weight to Dr. Prejean's opinion was proper because his opinion was in checklist form; he did not provide specific references or narrative citations to medical records that supported his opinion; and the ALJ considered other medical records relevant to Mielke's mental state. *Id.* at 7. The Commissioner contends that the ALJ was not required to apply the factors listed in 20 C.F.R. §§ 404.1527 and 416.927 because Dr. Prejean did not offer a medical opinion under 20 C.F.R. § 416.927(a)(1). *Id.* at 7–8.

12

The Social Security Administration states that it "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2) (2019). An ALJ should give a treating physician's opinion "great weight" in determining disability, but if good cause is shown, the ALJ may give the opinion little or no weight. *Rollins v. Astrue*, 464 F. App'x 353, 355 (5th Cir. 2012). If a treating physician's opinion consists of a mere checklist and is not accompanied by any contemporaneously recorded, medically acceptable findings, it is entitled to little weight on that basis alone. *Brown v. Astrue*, No. 11-2919, 2013 WL 620269, at *6 (E.D. La. Jan. 18, 2013) (citing *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980)). "District courts in the Fifth Circuit have found that an ALJ's determination that a doctor's opinions were not credible was supported when the physician completed a checklist form without any narrative citations to clinical findings . . . ." *Haynes v. Astrue*, No. 11-2289, 2012 WL 3860467, at *16 (E.D. La. July 23, 2012).

Before an ALJ determines that a treating physician's opinion is not entitled to "controlling weight," he must consider six factors:

> (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole, and (6) the specialization of the treating physician.

*Newton*, 209 F.3d at 456 (citing 20 C.F.R. § 404.1527). Even if the ALJ does not explicitly address each factor, however, any error would be harmless so long as the record contains all of the information required for the factors that the ALJ did not address. *See Rollins*, 464 F. App'x at 358. Further, "[t]he Fifth Circuit has held that ALJs are not required to consider the § 404.1527(c) factors before dismissing a treating physician's opinion if there is competing first-hand medical

13

evidence contradicting that opinion." *Brooks v. Comm'r of Soc. Sec.*, No. 15-2280, 2016 WL 6436791, at *8 (W.D. La. Sept. 26, 2016).

Here, Dr. Prejean's checklist opinion is not accompanied by contemporaneously recorded, medically acceptable findings, and the ALJ was thus not required to give it great weight. Additionally, the ALJ did not err in failing to consider the § 404.1527(c) factors because competing first-hand medical evidence contradicted Dr. Prejean's opinion. The ALJ stated that Dr. Prejean's opinion from April 25, 2018 was "drastically inconsistent with the claimant's presentation on January 3, 2018 at MHMR of Tarrant County." Tr. 22. Accordingly, the ALJ did not err in his evaluation of Dr. Prejean's opinion.

### C. The ALJ properly concluded that Mielke can perform jobs that exist in significant numbers in the national economy.

Mielke argues that the hypothetical question the ALJ asked the vocational expert ("VE") did not include significant functional limitations, such as limitations caused by his reactive airway disease and his social limitations, so the VE testimony cannot support the ALJ's step five conclusion. ECF No. 14 at 14–15. Mielke further argues that the jobs identified by the VE and relied upon by the ALJ—shipping and receiving weigher, bakery line worker, and fruit distributor—are inconsistent with Mielke's RFC. *Id.* at 15; Tr. 24. For example, the ALJ concluded that Mielke can work as a shipping and receiving weigher, but that position requires frequent handling, and the hypothetical question and RFC limited Mielke to occasional handling. ECF No. 14 at 15. Additionally, Mielke argues that because he lacks transferable work skills, he can only do unskilled work, and under the Occupational Outlook Handbook ("OOH"), a bakery line worker is not an unskilled job because it requires more than thirty days of training. *Id.* at 17. Mielke also argues that the duties of a fruit distributor as identified in the Dictionary of Occupational Terms ("DOT") appear inconsistent with the RFC and are clearly inconsistent with his functional

14

limitations. *Id.* at 18. Finally, Mielke contends that the ALJ and the Court should not use the DOT because it is outdated. *Id.* at 16. He suggests that the Court use the OOH instead and contends that the VE testimony was inconsistent with the OOH. *Id.* He asserts that the Commissioner has stated that the OOH is a reliable source. ECF No. 17 at 8. He further argues that the VE said the memory limitations that Dr. Bellah noted would prevent Mielke from performing the jobs that the VE listed, and the ALJ must resolve conflicts between the DOT and VE testimony. *Id.*

The Commissioner responds by arguing that the ALJ included in the RFC all of the limitations he determined were supported by the record evidence. ECF No. 15-2 at 8. Further, Mielke had the burden of questioning the VE for conflicts before relying on them in appeal. *Id.* The Commissioner contends that Mielke failed to allege that the duties of a bakery line worker or a fruit distributor are inconsistent with the DOT. *Id.* at 9. The Commissioner also points out that any question about the DOT's credibility already has been resolved through the rulemaking process. *Id.* at 9–10.

At step five, the Commissioner must show "that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. In cases in which the ALJ cannot rely on the Medical-Vocational Guidelines to determine disability, "the ALJ must rely upon expert vocational testimony or other similar evidence to establish that such jobs exist." *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (citation omitted).

The Social Security Administration has issued guidance regarding standards to be followed by ALJs in relying on VE evidence. *See* Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000). In particular, the guidance emphasizes that before relying on VE evidence to

15

support a disability determination, the ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or [vocational specialists ("VS")] and information in the Dictionary of Occupational Titles (DOT) . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved." *Id.* With respect to addressing conflicts in occupational information, SSR 00-4p provides:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

*Id.* at *2.

Courts have interpreted SSR 00-4p as placing on ALJs "an affirmative responsibility to ask about any possible conflict between VE evidence and the DOT" before relying on "VE evidence to support a determination of not disabled." *See Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) (citations and internal quotation marks omitted). When the VE relies on the DOT to support testimony, it is error for an ALJ to fail to ask the VE whether the testimony is consistent with the DOT. *Id.* However, as pointed out in *Graves*, the claimant bears the burden to show "that he or she was prejudiced by the ALJ's failure." *Id.* at 592–93 (quoting *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000)). Unless there is an actual conflict or the claimant demonstrates prejudice, this type of procedural error is "harmless and does not warrant reversal." *See id.* at 593.

Here, the ALJ's hypothetical question to the VE included all of the limitations in the RFC. Tr. 65. Mielke is correct that the hypothetical question limited him to occasional handling, but the VE testified that Mielke can perform the duties of a shipping and receiving weigher, which requires frequent handling. ECF No. 14 at 15. The ALJ did not ask the VE if his testimony was consistent with the DOT, although the VE likely relied on the DOT to support his testimony. *See* Tr. 65–70. This was error, but it was harmless because Mielke has not shown that he cannot perform the other two jobs the VE identified, so he has not met his burden of showing that the error prejudiced him.

The VE testified that Mielke could work as a bakery line worker. Tr. 66. Mielke argues that because he lacks transferable work skills, he can only do unskilled work, and under the OOH, a bakery line worker is not an unskilled job because it requires more than thirty days of training. ECF No. 14 at 17. He fails to allege that the VE's testimony that he can work as a bakery line worker is inconsistent with the DOT, however, and the DOT—not the OOH—is the standard that the Social Security Administration uses. *See* Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000). Because the burden of showing that the ALJ committed prejudicial error lies with the claimant, and Mielke has not met this burden, the ALJ did not commit prejudicial error by finding that Mielke has the RFC to work as a bakery line worker.

Finally, the VE testified that Mielke can work as a fruit distributor. Tr. 66. Mielke argues that the duties of a fruit distributor do not appear to be consistent with his RFC, but he does not provide any authority for this argument. ECF No. 14 at 18. He fails to establish that a conflict exists, nor does he show that the ALJ's failure to resolve the apparent conflict prejudiced him. In the absence of a showing that the ALJ erred in determining that he could work as a fruit distributor,

and a further showing that any error in that determination prejudiced him, Mielke has not met his burdens, and there is no ground for reversal of the ALJ on this point.

## IV. CONCLUSION

Because the ALJ employed the correct legal standards, substantial evidence in the record supports his decision, and Mielke has failed to show that reversal of the decision is required, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed on May 27, 2020.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE